UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

FRANCISCO PUJOL,

    Plaintiff,

vs.

CITY OF OPA-LOCKA,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Francisco Pujol ("Pujol" or "Plaintiff"), sues Defendant, the City of Opa-Locka ("City" or "Opa Locka"), and alleges as follows:

### Nature of Action and Jurisdiction

1. This is an action for damages under 42 U.S.C. §§ 1983 and 1988, and the United States Constitution, and against Defendant for committing acts, under color of state law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States.

2. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 in that this is an action to redress violations of Plaintiff's federally protected Constitutional rights.

3. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b)1 and 28 U.S.C. § 1391(b)2 as all events giving rise to this cause of action occurred in this judicial district and Defendant City is located in this venue.

4. All conditions precedent to this action have occurred or been performed, or are otherwise excused.

5. Plaintiff has retained the undersigned lawyers to represent his interests in prosecuting this action, and said law firms are entitled to their reasonable attorneys' fees and costs incurred in connection with same.

### Parties

6. Plaintiff, Francisco Pujol, is *sui juris* and a resident of Miami-Dade County, Florida.

7. Defendant, the City of Opa-Locka is a municipal corporation lying within Miami-Dade County, Florida.

8. At all times material, the individuals associated with the City as described fully herein, were employees and public officials of the City and/or were acting as the City's agent and representative, acted under color of state law.

9. As a result of the subject incidents, Pujol experienced severe pain and suffering including mental anguish, mental and emotional suffering, embarrassment, shame and humiliation, and other damages including but not limited to damages to his constitutional rights and property.

### Facts

10. Mr. Pujol, who arrived in the United States in 1980 from Cuba, always believed that with hard work he could provide for his family.

11. For approximately twenty-four (24) years, he sold tire service, offered tire disposal, and used heavy construction and equipment, and thought he found a location in the City from which to base his business for the storage, repair, and sale of service and equipment. Mr. Pujol had poured all of his life savings, as well as his blood, sweat and tears, into his business.

12. Mr. Pujol found a location at 3890 N.W. 132 Street, Bay H, Opa Locka, Florida 33054 ("First Property"). At the First Property, Mr. Pujol was required to obtain an occupational license by the City.

13. Opa Locka Mayor Myra Taylor's son, Demetrius Corleon Taylor ("Taylor"), under direction from his mother as a City agent and representative, demanded and extorted $3,500 from Pujol under the threat of not providing him with a license that he was otherwise entitled to under the law.

14. After obtaining the occupational license, Mr. Pujol received multiple visits at the direction of City officials from Code Enforcement Director Gregory Days ("Days"), who issued multiple citations to Pujol.

15. Days then extorted $1,500 from Mr. Pujol, at which time Days proceeded to void fines against Pujol.

16. Mr. Pujol found a second location at 2695 N.W. 141 Street, Opa Locka, Florida 33054 (the "Second Property"). At the Second Property, Mr. Pujol was required to pay the previous owner of Second Property in the amount of $1,500 for the explicit purpose of making payments to the City Officials for the removal of liens and in response to their extortion attempts.

17. Opa Locka City Manager David Chiverton ("Chiverton") extorted a payment of $1,500 from Pujol in order to remove property liens at the Second Property which had already been paid by the prior owner – including at least $5,000 in payments to Chiverton made by said prior owner. Once the $1,500 payment was made to Chiverton by Pujol, Chiverton made a "recommendation" to "settle 'ALL' Numbers due to lien and incorrect information notification" for a small payment to the City also made by Pujol in the additional amount of $1,200 for total lien

satisfaction. All of these payments were part of an extortion scheme of said City officials and their conduits.

18. Chiverton, Days, Santiago, and others in the City routinely turned code violations into cash for themselves and other powerful City commissioners and figures.

19. Mr. Pujol sought to receive a new occupational license for the Second Property. Pujol met with Opa Locka Commissioner Luis Santiago ("Santiago"). Mr. Santiago demanded a total extortion payment of $2,500, in which Mr. Pujol made an initial payment of $1,500.

20. Mr. Pujol subsequently made the second payment to Santiago in the amount of $1,000 toward the remaining balance of $2,500.

21. Mr. Pujol was then required to obtain a license for heavy mechanics for the Second Property. Mr. Pujol met with City Manager Chiverton, who sought to assist Mr. Pujol in obtaining his license for heavy mechanics by extorting Pujol for the total demand of $10,000. Chiverton stated that the City Commissioners needed to be paid as well. Mr. Pujol, who at that time had sought the assistance of the Federal Bureau of Investigations ("FBI"), paid Chiverton an initial down payment of $2,500 while under FBI surveillance in a bathroom at City Hall. Minutes later, and still while at City Hall, Pujol bumped into Commissioner Santiago in the Hallway; Pujol let Santiago know he had paid Chiverton, and still while he was recording the extortion racket for the FBI.

22. At two separate locations, and over a period of years, Pujol and his business were destroyed because of the aforementioned, ongoing extortion by Opa Locka City Officials, including but not limited to City Manager David Chiverton, Code Enforcement Director Days, Commissioner Luis Santiago, and Mayor Myra Taylor's son at his mother's direction, all under color of title and law.

23. Mr. Pujol was deprived of his property and suffered mental and emotional anguish as a result of the extortion committed against him by said Opa Locka officials, who acted in their official capacities and using their official authority.

24. Upon information and belief, the City officials did not engage in this extortion against non-Hispanic businesses and persons, but rather they specifically targeted Pujol because of his race, origin and ethnicity, just like another Hispanic business owner in Opa Locka who also cooperated with the FBI, Francisco Zambrana.

25. Upon information and belief, the City officials engaged in a pervasive and systemic pattern, custom and practice of threats, coercion and extortion, as described herein, which included Pujol, and all in furtherance of their official duties while acting under color of law.

26. There have been numerous convictions of City officials arising out of the widespread corruption in Opa Locka, consistent with the allegations set forth herein, including Days, Santiago, Chiverton, City Commissioner Terence Pinder, City Public Works Supervisor Gregory Harris, and City Mayor Myra Taylor's son Taylor.

## COUNT I
### (Violation of Equal Protection Clause)

27. Plaintiff re-alleges paragraphs 1 through 26 as if fully set forth herein.

28. The City enforced a practice and custom of threatening, intimidating and extorting individuals intending to operate a business in the City, including this Plaintiff, based on race and national origin.

29. The practice and custom was authorized by policymakers within the City, and it was a widespread practice so pervasive, permanent, and well-settled so as to constitute a custom, practice or usage with the force of law.

30. As a direct and proximate result of the aforementioned acts and omissions, Plaintiff's Fourteenth Amendment Rights have been violated. By their acts and omissions, the City officials, including but not limited to Days, Chiverton and Santiago, acted under color of state law to deprive Plaintiff of his Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

31. As a direct and proximate result of the violations of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered mental and emotional pain and suffering, mental anguish, embarrassment, humiliation and other damages.

WHEREFORE, Plaintiff demands judgment for compensatory and special damages, punitive damages, an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 42 U.S.C. §§ 1920 and 1988, and all other relief the Court may deem just and proper.

## COUNT II
### (Deprivation of Property and Rights without Due Process)

32. Plaintiff re-alleges paragraphs 1 through 26 as if fully set forth herein.

33. The City enforced a practice and custom of threats, intimidation and extortion to deprive individuals, including Plaintiff, of their property and rights, without procedural and substantive due process guaranteed under the Constitution, and in violation thereof.

34. The practice and custom was authorized by policymakers within the City and it was a widespread practice so pervasive and permanent, and wide-spread and well-settled, as to constitute a custom, practice or usage with the force of law. The use of threats, intimidation and extortion was the way things were "business as usual" within the City and the way things were done.

35. As a direct and proximate result of the aforementioned acts and omissions, Plaintiff's Constitutional rights have been violated. By their acts and omissions, the City officials,

including Days, Chiverton and Santiago, acted under the color of state law to deprive Plaintiff of his Constitutional rights without due process in violation of 42 U.S.C. § 1983.

36. As a direct and proximate cause of the violations of Plaintiff's rights, Plaintiff has suffered severe mental and emotional pain and suffering, mental anguish, embarrassment, humiliation, and other damages.

WHEREFORE, Plaintiff demands judgment for compensatory and special damages, punitive damages, an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 42 U.S.C. §§ 1920 and 1988, and all other relief the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues triable by jury.

## **VERIFICATION**

_[signature]_
FRANCISCO PUJOL

STATE OF FLORIDA     )
                     )
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me this 26TH day of May, 2017, by Francisco Pujol, and who is personally known to me and presented his Florida Drivers License, and who did take an oath and states that he has read and understands the Verified Complaint herein, and he has acknowledged before me that he has personal knowledge of the facts contained therein and that the Verified Complaint is true and correct in all respects.

_[signature]_
NOTARY PUBLIC, STATE OF FLORIDA

My Commission Expires:

DOUGLAS J. JEFFREY
MY COMMISSION # FF 159691
EXPIRES: January 12, 2019
Bonded Thru Budget Notary Services

8

Dated this 26th day of May, 2017.

                              Respectfully submitted,

**MICHAEL A. PIZZI, JR. P.A.**
6625 Miami Lakes Drive East, Suite 313
Miami Lakes, Florida 33014
Telephone:   (305) 777-3800
Fax:           (305) 777-3802
Email:        mpizzi@pizzilaw.com

By:    /s/ Michael A. Pizzi, Jr.
        MICHAEL A. PIZZI, JR.
        Florida Bar No.: 079545

- And -

**LAW OFFICES OF DOUGLAS J. JEFFREY, P.A.**
**Attorneys for Francisco Pujol**
6625 Miami Lakes Drive East, Suite 379
Miami Lakes, Florida 33014
Telephone: (305) 828-4744
Facsimile:   (305) 828-4718
Email: dj@jeffreylawfirm.com

By:   /s/Douglas J. Jeffrey
       DOUGLAS J. JEFFREY
       Florida Bar No. 149527

9